```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KARSTEN A. AARHUS,                    :
           Plaintiff                  :
                                      : Civil Action No. 04-253J
JOANNE B. BARNHART, COMMISSIONER      :
OF SOCIAL SECURITY,                   :
           Defendant                  :
```

**Report and Recommendation**

Recommendation

Karsten Aarhus appeals from the decision of the Commissioner of Social Security denying his application for disability benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401-33, and supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C.§§ 1381-83f. An ALJ found, on June 16, 2004, that Aarhus was not disabled up to and including that date. Tr. 14-21. The Appeals Council, after considering a letter brief from Aarhus's former counsel, Tr. 7-9, denied review on August 20, 2004, Tr. 4-6, thus making the ALJ's findings the basis for the Commissioner's decision.

Because substantial evidence supports the ALJ's findings that Aarhus was not disabled for the period in question, I recommend that the defendant's motion for summary judgment, docket no. 11, be granted, the plaintiff's motion for summary judgment, docket no. 9, be denied, and the decision of the Commissioner affirmed.

Report

Aarhus applied for benefits in August 2003, Tr. 53, 195, alleging that he had been disabled since February 10, 2003, when his

automobile was hit broadside by an out of control automobile. Aarhus was in the driver's seat of his stationary vehicle at the moment of impact, putting on his seat belt. The impact caused or aggravated numerous vertebral disk problems in Aarhus's back and neck, which cause him pain and limit his abilities.

After a hearing on June 7, 2004, Tr. 203-40, an ALJ found Aarhus not disabled on June 16, 2004. Tr. 14-21. The court's duty in reviewing that denial of disability benefits and SSI is to determine whether "substantial evidence," 42 U.S.C.§ 405(g), 1383(c)(3), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971), supports the ALJ's finding that Aarhus is not disabled. See Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999); Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir.1999). The definition of disability for purposes of disability benefits and SSI requires an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C.§§ 423(d)(1)(A), 1382c(a)(3)(A).

The substantial evidence standard of review requires the court to examine the whole record, not simply to confirm the existence of those pieces of evidence relied upon by the ALJ, see Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.2003)(citation

2

omitted), and I have therefore read the entire record, whether cited by counsel or not. However, even in cases such as this one, where my reading of the record would incline me to find Aarhus disabled if my review were <u>de</u> <u>novo</u>, substantial basis review does not permit me to substitute my judgment for that of the ALJ. <u>Hartranft v. Apfel</u>, <u>supra</u>, 181 F.3d at 360.

The ALJ used the five-step disability analysis set forth at 20 C.F.R.§§ 404.1520 and 416.920. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). It is not in dispute that at step one: (1) Aarhus was not working after the accident date; and (2) he has severe impairments: cervical and lumbar disc injuries, and the pain which those continuing injuries cause. Aarhus argued before the ALJ that he meets the requirements of Listing 1.04, disorders of the spine, but he does not renew that argument here and it does not appear that he would meet the requirements of that listing. At the fourth step the ALJ found that (4) Aarhus could not return to his relevant past heavy semiskilled work as an over the road truck driver.

At the fifth and final step, the ALJ found that (5) Aarhus retains the residual functional capacity to do the work necessary in a limited range of sedentary jobs. The ALJ posed a hypothetical to the vocational expert assuming that a person of Aarhus's age and work experience had the ability only to do sedentary work, and that even at that level the person was limited to simple repetitive tasks

3

with no more than occasional stooping, kneeling, climbing ramps and stairs, could only occasionally use his arms or legs to operate push or pull controls, and needed to work in an environment without excessive vibration. Tr. 210, 231-33. The vocational expert testified that even with those limitations, an individual of Aarhus's age education and experience could perform jobs such as small parts assembler, mechanical assembler, clerical sorter, shoe leather worker, and racker. The vocational expert stated that there were millions of such jobs in the national economy.

The dispositive question on appeal is whether the ALJ's hypothetical to the vocational expert adequately contained all of the functional limitations caused by Aarhus's nonexertional impairments. See Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir.2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). Aarhus argues that the ALJ failed to respect the rule illustrated by Ramirez, that the hypothetical posed to the vocational expert must contain all the limitations the ALJ does find. Aarhus also argues that the ALJ did not respect the rule illustrated in Chrupcala that substantial evidence must support the choice of the ALJ to reject limitations the ALJ does **not** include in the hypothetical. In Ramirez, the ALJ's hypothetical limitation of an individual to "simple one or two step tasks" did not adequately capture the limitations caused by the finding made by the ALJ that the claimant "often" had deficiencies in concentration, persistence, and pace.

4

372 F.3d 552-53.  In <u>Chrupcala</u>, the ALJ's hypothetical question was consistent with his findings, but his finding that the claimant's nonexertional limitation of constant and severe pain was not disabling was not supported by substantial evidence.  829 F.2d at 1276.

On February 10, 2003, Aarhus was 39 years old and was employed as a tractor trailer driver.  After being injured in the automobile accident on that day, he went to the emergency room of Nason Hospital, where x-rays of his cervical and lumbar spines were taken, along with CT scans of his abdomen and pelvis.  The results of these scans were normal.  Tr. 100-02.  Aarhus nevertheless continued to suffer considerable pain.  An MRI of his cervical spine on March 1, 2003, showed a moderate-sized disc protrusion at C6-C7, with significant encroachment of the lateral inferior recess and neural foramen; the MRI of Aarhus's lumbar spine was normal.  Tr. 107.  Aarhus participated in physical therapy for two months without improvement of symptoms.  Tr. 130-38.  The discharge note also stated, however contradictorily, that Aarhus had "fair rehabilitation potential."  Tr. 131.

On May 18, 2003, Michael Moncman, D.O., a neurologist, evaluated Aarhus at the request of Stanley Kotala, M.D., Aarhus's family physician.  Tr. 108-09.  Moncman reported that Aarhus had pain in his back and legs, and that turning, flexing, or extending his neck were "functional but painful," and that Aarhus had no focal

5

neurological abnormalities, trigger points or muscle spasms. Moncman's diagnosis was right cervical radiculitis without radiculopathy, a herniated cervical disc at C6-C7, and mechanical back pain by history. Moncman also noted complaints of depression, anxiety, and weight gain, and referred Aarhus to a pain clinic.

At the Allegheny Pain Management pain clinic Michael J. Drass, M.D., administered a set of epidural steroid injections to Aarhus in June, July, and August 2003. Tr. 141-45. Drass diagnosed right cervical radiculitis, a herniated nucleus pulposus at C6-C7, and a myofascial pain disorder of thoracic, lumbar and cervical spines. Tr. 141-45. Aarhus also had a consultation with an orthopedist, Mark R. Foster, M.D., in August 2003. Tr. 125-26, 157. Foster reported that Aarhus was able to bend forward seventy degrees and to heel walk. Aarhus's motor strength and reflexes were intact. He had difficulty walking on his toes. Foster's diagnosis was lumbar and cervical sprain, with a central disc herniated nucleus pulposus at C6-C7 on the right. Foster opined that Aarhus was significantly impaired in performing his usual and customary activities, that the steroid injections had not helped (a conclusion Drass came to as well, see Tr. 141-42), and that Aarhus should continue physical therapy. Tr. 126. Aarhus underwent two more months of physical therapy, at the end of which he reported he could walk about 100 yards before suffering severe pain, a result no different from the beginning of therapy. Tr. 167-69. Aarhus had an

MRI of his lumbar spine in October 2003, which revealed disc degeneration throughout the lumbar spine. Tr. 164. Foster saw Aarhus again in November 2003, and noted that Aarhus's condition was about the same as before. Tr. 155.

In January 2004, a contrast CT scan and an MRI showed that Aarhus had degenerated discs at L4-5 and L5-S1, with a tear of the annulus. Tr. 160-61. After an orthopedic evaluation in February 2004, Foster reported that Aarhus was not essentially changed and was not likely to improve without surgical intervention. Tr. 159. In March 2004, Foster and Philip G. Georgevich, M.D., performed surgery at University of Pittsburgh Medical Center: Aarhus underwent an iliac crest bone graft and spinal fusion at L4-5 and L5-S1. Tr. 172-92. Foster saw Aarhus one month after the surgery and noted, Tr. 158, that Aarhus reported subjectively: "Overall he is doing very well. His pains in his legs have diminished. They are much less severe and they occur only intermittently. His back pain is still there. However it is not as intense as it was. He has been wearing his brace regularly and doing a lot of walking." Foster's own assessment was "Satisfactory ALIF l4-L5 fusion with cages." Foster recommended that Aarhus walk as much as possible and hoped to resume physical therapy in the summer of 2004.

At the hearing before the ALJ in June 2004, Aarhus stated he currently felt "the same" as he felt before his back surgery, and that he was using a prescribed back brace and a cane. Aarhus also

7

uses a scooter when grocery shopping. For pain relief Aarhus was taking Endocet, and Avinza, a morphine derivative; these made him feel drowsy. Even with medication, he still suffered severe pain in his back and neck which radiated into his right arm, and interfered with his concentration and his sleep. Tr. 210-12, 222-23. His activities included watching television and reading, but his former wide range of activities was gone. Aarhus reported it took him three hours to mow his lawn with a push mower, compared to one-half hour before his injury. Tr. 216-17. Aarhus has a hospital bed in the living room of his house to avoid having to climb the stairs to his bedroom. He climbs the stairs only to use the bathroom on the second floor. Tr. 224-25. Aarhus also testified that a doctor Sallenberger, whose records do not appear in the file, had prescribed Effexor as an anti-depressant, and that this helped his mood somewhat. Tr. 219-20. Aarhus planned to have surgery on his cervical spine after he recovered from his back surgery. Tr. 222.

The dispositive issue is whether the evidence that Aarhus's pain is disabling is so great that the ALJ's decision, that the pain was severely limiting but not disabling, is supported by substantial evidence. In evaluating Aarhus's testimony about the intensity and persistence of his pain, the ALJ was required, see 20 C.F.R.§§ 404.1529(c) and 416.929(c)(3), to consider Aarhus's daily activities, the nature and intensity of pain, the degree of relief from pain afforded by medications, and Aarhus' course of treatment.

The ALJ focused immediately, Tr. 16, on what appears to be the crucial piece of evidence: Foster's evaluation in April 2004 that Aarhus was doing well after surgery, with less back and leg pain. Contrary to Aarhus's testimony before the ALJ about the severe limitations on his ability to walk, Foster noted that Aarhus reported "a lot of" walking. Aarhus also testified that he had used a push mower to cut his lawn the Thursday before the ALJ hearing, Tr. 225, and although it took him three hours to mow a lawn about a third of an acre in size, see Tr. 81., his ability to do that and other activities such as shopping (with use of an electric scooter), indicated to the ALJ that Aarhus was not unable to function at the sedentary level. Aarhus testified to sleep disturbances from pain, to fatigue, and to difficulty concentrating. The ALJ noted that there were no records that Aarhus had reported any of these complaints to his physicians, Tr. 17, much less that they were supported by records of medical treatment, or even signs of muscle atrophy. The ALJ noted the similar absence of records relevant to any complaints of depression or treatment for depression, and the lack of records corroborating Aarhus's statements about future surgery. Finally, although Foster's and Drass' office notes easily support a reading that Aarhus could not return to his past work and had severe restrictions on his functional capacity, those were the ALJ's starting points. See Tr. 206. Neither Foster nor Kotala nor Drass nor Moncman ever opined that Aarhus was unable to do sedentary

9

work.  (The ALJ even erred in Aarhus's favor by accepting Foster's November 2003 office notes, in which he recorded Aarhus's assessment in the "subjective" section of his notes that Aarhus was totally disabled, as an opinion by Foster.  <u>See</u> Tr. 18, analyzing Tr. 155. Normally, a doctor would confine his own opinion to the "objective" or "assessment" portion of the notes.  In any case, the ALJ correctly noted that Foster had provided no explanation in the form of a residual functional capacity assessment.  An ALJ is not required to defer to an opinion which is unsupported or which is contradicted, and if Foster's note were construed as Foster's opinion, it is an opinion both unsupported by any reasoned explanation and contradicted by Foster's opinions of Aarhus's condition after the spinal fusion.)  The only categorical opinion of record is by a state disability evaluator, who evaluated Aarhus as able to do light work.  Tr. 146-53.  The ALJ discounted this opinion as well, and quite properly, Tr. 18, because it was offered in September 2003, and because the doctor who gave the opinion simply reviewed Aarhus's records as of that date.

In sum, Aarhus is seriously injured, and the ALJ was sensitive to this.  The ALJ did not find Aarhus not disabled by selectively looking at the evidence or ignoring Aarhus's testimony. The ALJ found that the evidence, that Aarhus was improving after surgery, that no doctor (except for the Foster opinion discussed above) had ever had found Aarhus unable to do sedentary work, and

10

that Aarhus retained a limited ability despite his pain to continue his daily activities, was consistent with the ability to do simple sedentary work.  Although the ALJ could have found to the contrary, the findings he did make were supported by substantial evidence. The Commissioner's decision that Aarhus was not disabled through June 16, 2004, must therefore be affirmed.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 30 January 2006

Keith A. Pesto,
United States Magistrate Judge

cc:
David M. Axinn, Esquire
1904 N. Juniata Street
P.O. Box 597
Hollidaysburg, PA 16648

John J. Valkovci, Jr., Esquire
224 Penn Traffic Building
319 Washington Street
Johnstown, PA 15901